[Cite as *State v. Lake*, 2011-Ohio-261.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  | : | JUDGES: |
| STATE OF OHIO | : | Julie A. Edwards, P.J. |
|  | : | William B. Hoffman, J. |
| Plaintiff-Appellee | : | Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : | Case No. 2010 CA 88 |
|  | : |  |
|  | : |  |
| DAMIEN LAKE | : | O P I N I O N |
|  |  |  |
| Defendant-Appellant |  |  |


CHARACTER OF PROCEEDING:      Criminal Appeal from Richland
                             County Court of Common Pleas Case
                             No. 2008 CR 596D

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      January 20, 2011

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

JAMES J. MAYER, JR.                   DAMIEN LAKE
Prosecutor – Richland County          Inmate #561-789
38 South Park Street                  Mansfield Correctional Institution
Mansfield, Ohio  44902                P.O. Box 788
                                      Mansfield, Ohio  44901

*Edwards, P.J.*

{¶1} Defendant-appellant, Damien Lake, appeals from the June 14, 2010, Judgment Entry of the Richland County Court of Common Pleas overruling his Motion for Leave to File a Motion for a New Trial. Plaintiff-appellee is the State of Ohio.

<u>STATEMENT OF THE FACTS AND CASE</u>[1]

{¶2} On the afternoon of July 27, 2008, Jordan Bryant, Corey Fix, and David Webb went to the Forest Hills Mobile Home Park located off Ashland Road in Richland County, Ohio. Jordan Bryant's aunt lived in that trailer park, and he was going to pay her back some money that she had loaned him.

{¶3} When they pulled into the drive of the trailer park, they saw Ricky Davis and appellant, who went by the street name "Larry." Jordan indicated that he had been in a fight with Ricky Davis about two weeks prior to that date, and he had heard from other people that Ricky was planning to shoot him.

{¶4} The boys parked the car near the entrance to the trailer park, and Jordan and Corey got out confronting Ricky. Jordan asked Rickey if he had said he was going to shoot him, which started an exchange of words. During this verbal confrontation, appellant put his hand under his shirt and removed something, which he hid behind his right leg. Fearing that something was about to happen, Jordan and Corey started to get back in the car. Jordan told appellant that they would settle the matter another time. At that point, appellant pointed a gun at Jordan and told him that he had "better get [his] boy in the car or he's going to blow [his] f'ing brains all over the back of the seat."

---

[1] The Statement of the Facts and Case is taken from this Court's Opinion in *State v. Lake*, Richland App. No. 2009-CA-0011, 2010-Ohio-1113.

{¶5} As appellant stood in the drive pointing the gun at the three boys, Richland County Sheriff's Deputy Jeffrey Frazier drove by on Ashland Road. He was on his way to meet Sergeant Donald Zehner in the area of State Route 30 and Ashland Road to look for a suspect in an unrelated matter. When he saw the confrontation in the drive of the trailer park, he radioed that he was responding to a disturbance in the area of 710 Ashland Road. He did a U-turn and turned into the trailer park.

{¶6} When Deputy Frazier saw appellant pointing a gun, he immediately radioed that he had a subject with a gun and needed back up. He then exited his cruiser, pulled his gun, and ordered appellant to drop his weapon. Appellant swung around and pointed his gun at Deputy Frazier.

{¶7} As this occurred, Jessica Crain was driving out of the trailer park on her way back to work. She observed this confrontation between Deputy Frazier and appellant, and heard a clicking noise that sounded like it came from a gun as appellant backed up behind her vehicle with the gun still pointed at the officer. Appellant then said "shit," and turned and fled up the hill into the trailer park with Deputy Frazier in pursuit. As appellant fled through the trailer park, he turned and pointed the gun at Deputy Frazier a second time. Deputy Frazier indicated that he continued to train his weapon on appellant; however, he could not get a clear shot because his gun was bouncing up and down as he was running, and there were bystanders in the area.

{¶8} Deputy Frazier continued to pursue appellant to the Eastgate Apartment Complex located next to the trailer park. As they were running between the apartment buildings, they encountered Vendetta Camper, who had heard what she thought were gunshots and was attempting to locate her grandchildren. As appellant ran towards her,

Deputy Frazier yelled at her to go inside because he had a gun. He then lost sight of appellant.

{¶9} Despite an exhaustive search of the area by many police agencies, appellant was not located on August 27, 2008. However, based upon witness statements, Officers were able to determine his identity. They prepared a photo line-up containing appellant's BMV picture, along with photos of five other individuals. This line up was shown to Jordan Bryant, Corey Fix, David Webb, and Vendetta Camper. All four witnesses identified appellant as the subject who was involved in the confrontation with Deputy Frazier.

{¶10} At some point during the foot pursuit, appellant threw down the gun. Ricky Davis' cousin, Gary Crain, saw Ricky and appellant running from the officer, and knew that the gun belonged to his cousin. He picked the gun up and hid it underneath his trailer in an attempt to keep his cousin from getting in trouble for carrying a loaded weapon. Mr. Crain initially lied to the police about knowing the parties involved or the whereabouts of the gun; however, later that evening, he admitted that he lied and led Sergeant Zehner to the opening under his trailer where he had hidden the weapon. An examination of the weapon revealed that it was a fully loaded .357 Taurus revolver. The round in the top chamber, which was lined up to fire, had a firing pin impression in the primer cap, indicating that it had been misfired.

{¶11} Appellant was eventually located and arrested on August 7, 2008, at Barbara Neace's house in Mansfield, Ohio.

{¶12} Appellant was indicted by the Richland County Grand Jury for one count of felonious assault on a peace officer, a felony of the first degree, for attempting to fire

a gun at Deputy Frazier during the July 27, 2008, confrontation. Count I included a mandatory three-year firearm specification. He was also indicted for one count of possession of drugs, a felony of the fifth degree, for heroin found at Barbara Neace's house when he was arrested on August 7, 2008.

{¶13} Appellant's trial commenced on January 8, 2009, and lasted three days. During the trial, the State presented testimony from eyewitnesses, Jordan Bryant, Corey Fix, David Webb, Jessica Crain, Gary Crain, and Vendetta Camper, and the victim, Deputy Jeffrey Frazier. The State also presented testimony from Sergeant Donald Zehner, Detective Robert Mack, Deputy Stan Montgomery, and Captain Eric Bosko regarding the investigation into the July 27, 2008 incident and the arrest of appellant. Finally, the State presented testimony from experts, Jonathan Gardner of the Ohio Bureau of Identification and Investigation and Anthony Tambasco and Dawn Fryback of the Mansfield Police Crime Lab, regarding testing performed on the gun and the drugs.

{¶14} After the State rested, the defense called Barbara Neace, appellant's girlfriend Dannette Davis, and Ricky Davis, Jr., who each claimed that appellant was in Chicago at the time of the felonious assault, and that it was committed by some other man named "Larry." Appellant did not take the stand on his own behalf. After the defense presented its case, the State re-called Detective Robert Mack as a rebuttal witness. Detective Mack testified regarding his conversation with Dannette Davis, where she referred to appellant as "Larry" and did not mention that he was in Chicago.

{¶15} The jury found appellant guilty on the felonious assault charge and the attached firearm specification, but not guilty on the possession of drugs charge. The trial

court sentenced appellant to ten years in prison with a three-year mandatory sentence for the firearm specification.

{¶16} Appellant then appealed. Pursuant to an Opinion filed on March 18, 2010, in *State v. Lake*, Richland App. No. 2009-CA-0011, 2010-Ohio-1113, this Court affirmed appellant's conviction and sentence.

{¶17} While his appeal was pending, appellant, on March 3, 2010, filed a Motion for Leave to File a Motion for a New Trial. Attached to appellant's motion was an affidavit from August Fryer dated February 18, 2010. Fryer, in her affidavit, stated as follows:

{¶18} "1. I August Fryer attest with certainty that Damien Lake spent at least two weeks at his mother's house Rochell Lake Address 10430 S. Indiana from July 25, 2008 to August 6, 2008.

{¶19} "2. At that time I lived next door to Damien's mother at address 10428 S. Indiana and was best friends with Rochell Lake and visited her home very day.

{¶20} "3. My current address now is 7142 South Lafayette Avenue Chicago, Illinois 60621.

{¶21} "4. I frequently visited Damien's mother house daily when I lived at my old address and I know for a fact Damien was in Chicago July 27, 2008.

{¶22} "5. I was unable to come forward with this information because when Damien was arrested August 7, 2008, by me living in Chicago I had no knowledge of this or any further information.

**{¶23}** "6. On August 28, 2008 I moved from my old address to 10428 S. Indiana to 7142 S. Lafayette Ave. and lost contact with Damien's mother who also moved from her address.

**{¶24}** "7. It wasn't until Febuary (sic) 16, 2010 I seen Ms. Lake at an (sic) grocery store while shopping and she explained to me about Damien's incarceration.

**{¶25}** "8. At that time she told me Damien was convicted for a crime in Ohio that occurred on July 27, 2008.

**{¶26}** "9. Upon hearing this information I told Damien's mother I would do what I could.

**{¶27}** "10. I have signed and had this Affidavit notorized (sic) because I know Damien was in Chicago, Illinois from July 25, 2008 to August 6, 2008 and could not have been in Ohio on July 27, 2008.

**{¶28}** "11. I August Fryer would testify to this Affidavit being true in open court."

**{¶29}** Appellant, in his motion, alleged that he was unavoidably prevented from discovering such evidence within 120 days after his conviction because his mother did not come into contact with Fryer until "well after the 120 day period after the conclusion of his trial" and because Fryer had moved prior to appellant's trial and lost contact with appellant's mother.

**{¶30}** As memorialized in a Judgment Entry filed on June 14, 2010, the trial court overruled appellant's motion. The trial court, in its Judgment Entry, found that the newly discovered evidence was not so compelling that it would result in a different outcome at trial. The trial court also found that had appellant exercised due diligence

prior to trial, appellant would have discovered such evidence. The trial court, in its Judgment Entry, stated, in relevant part, as follows:

**{¶31}** "Mr. Lake [appellant] had to know Mr./Ms. Fryer would know if he was in Chicago at the time of the offense. It also taxes credibility that his mother's best friend who visited with her on a daily basis would not tell her best friend where she was moving to or where she was now living for 2 ½ years in this day of computer and telephone technology…. This evidence is also cumulative. Three witnesses had already placed Mr. Lake in Chicago. A fourth would not probably change the ultimate verdict…."

**{¶32}** Appellant now appeals from the trial court's June 14, 2010 Judgment Entry, raising the following assignment of error on appeal:

**{¶33}** "THE TRIAL COURT ERRED/ABUSED ITS DISCRETION IN VIOLATING APPELLANT'S SIXTH AND FOURTEENTH AMENDMENT [SIC] TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION IN DENYING APPELLANT LEAVE TO FILE MOTION FOR NEW TRIAL BASED UPON NEWLY DISCOVERED EVIDENCE. APPELLANT BROUGHT FORTH AN AFFIDAVIT OF TESTIMONY THAT PLACES APPELLANT IN ANOTHER STATE DURING THE COMMISSION OF THE CRIME."

I

**{¶34}** Appellant, in his sole assignment of error, argues that the trial court erred in overruling his Motion for Leave to File a Motion for a New Trial. We disagree.

{¶35} Crim.R. 33 governs new trials. Under Crim.R. 33(A)(6), a new trial may be granted when "new evidence material to the defense is discovered, which the defendant could not with reasonable diligence have discovered and produced at the trial."

{¶36} Subsection (B) of Crim.R. 33 states, in relevant part, as follows: "Application for a new trial shall be made by motion which, except for the cause of newly discovered evidence, shall be filed within fourteen days after the verdict was rendered, or the decision of the court where a trial by jury has been waived, unless it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from filing his motion for a new trial, in which case the motion shall be filed within seven days from the order of the court finding that the defendant was unavoidably prevented from filing such motion within the time provided herein."

{¶37} "[A] party is 'unavoidably prevented' from filing a motion for a new trial if the party had no knowledge of the existence of the ground supporting the motion and could not have learned of that existence within the time prescribed for filing the motion in the exercise of reasonable diligence." *State v. Walden* (1984), 19 Ohio App.3d 141, 145-146, 483 N.E.2d 859.

{¶38} In this case, appellant's Motion for New Trial was filed on March 3, 2010, clearly outside of the fourteen day rule. However, appellant based his motion on allegedly newly discovered evidence. Crim.R. 33(B) provides that motions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered or from the trial court's decision unless "*it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely.*"

(Emphasis added). Thus, an untimely motion for new trial based on newly discovered evidence must show, by clear and convincing proof, that the defendant was "unavoidably prevented" from discovering the new evidence. *State v. Fortson,* Cuyahoga App. No. 82545, 2003-Ohio-5387 at ¶ 10.

{¶39} In *State v. Petro* (1947), 148 Ohio St. 505, 76 N .E.2d 370, syllabus, the Supreme Court of Ohio held the following: "To warrant the granting of a motion for a new trial in a criminal case, based on the ground of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence. *(State v. Lopa,* 96 Ohio St. 410, 117 N.E. 319, approved and followed)."

{¶40} In the case sub judice, the trial court found, and we concur, that appellant failed to show by clear and convincing evidence that he was unavoidably prevented from timely discovery of the "newly discovered" evidence. Significantly, appellant did not provide the trial court with any evidence as to his efforts to locate Fryer who alleges in her affidavit that she was living next door to appellant's mother until August 28, 2008, which is after appellant's arrest.  Appellant failed to present any evidence that he was unavoidably prevented from discovering that Fryer could provide an alibi for him at trial. Moreover, as noted by the trial court, appellant had to know if Fryer knew he was in Chicago at the time of the offense.  As the State noted in its response to appellant's

motion, appellant never set forth how he was prevented from securing Fryer as a witness at trial, during his appeal or "for the last two and one-half years."

{¶41} Moreover, we find that even if the trial court had granted appellant leave to file his Motion for New Trial, appellant would not have prevailed upon the merits. Four eye witnesses picked appellant's photo out of the photo line-up. While at trial, three witnesses testified that appellant was in Chicago at the time of the offense, the State of Ohio called a total of seven identifying witnesses.

{¶42} Based on the foregoing, we find that the trial court did not err in denying appellant's motion.

{¶43} Appellant's sole assignment of error is, therefore, overruled.

{¶44} Accordingly, the judgment of the Richland County Court of Common Pleas is affirmed.


By: Edwards, P.J.

Hoffman, J. and

Delaney, J. concur

_____

_____

_____

JUDGES

JAE/0920

[Cite as *State v. Lake*, 2011-Ohio-261.]

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO                  :

                                  :

         Plaintiff-Appellee     :

                                  :

                                  :

-vs-                            :         JUDGMENT ENTRY

                                  :

DAMIEN LAKE                :

                                  :

         Defendant-Appellant   :         CASE NO. 2010 CA 88

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Richland County Court of Common Pleas is affirmed. Costs assessed to appellant.

_____

_____

_____

JUDGES